**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| IN RE ) | |
| ) | |
| TIMOTHY STIRNEMAN, ) | |
| ) | Bankruptcy No. 09-20315 |
| Debtor. ) | |
| ) | |
| ) | |
| TIMOTHY STIRNEMAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Adversary No. 09-00556 |
| ) | |
| AUDREY STIRNEMAN, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**MEMORANDUM OPINION ON DR. TIMOTHY STIRNEMAN'S**
**MOTION FOR A PRELIMINARY INJUNCTION**

This Adversary proceeding involves a dispute between parties who are also estranged spouses over moneys allegedly owed by the wife, Dr. Audrey Stirneman, to the husband, Dr. Timothy Stirneman. To effect a separation of their previously jointly run dental practice, All Smiles Dental, P.C., these two parties entered into a Term Sheet Agreement on December 28, 2009, and a Supplement to that Agreement on April 6, 2009 (collectively, the "Agreement"). They agreed to allocate space in the same building for the separate practice of each. The Agreement also scheduled the hours when each dentist could make exclusive use of their shared office space. Additionally, each dentist was to contribute 50% of certain past due expenses and 50% of certain ongoing shared expenses. Notwithstanding the Agreement, the two continue to dispute their respective financial

1

obligations. On June 3, 2009, Dr. Timothy Stirneman filed for relief under Chapter 11 of the Bankruptcy Code and, on July 6, 2009, he commenced this Adversary proceeding against his wife. In his Complaint, he seeks to recover money that he alleges Dr. Audrey Stirneman owes under the Agreement, as well as an injunction protecting his rights and mandating compliance with the Agreement. On October 3, 2009, Plaintiff moved for a preliminary injunction directing Dr. Audrey Stirneman to make payments as required in the Agreement and modifying the Agreement to allow Dr. Timothy Stirneman additional hours to operate his dental practice. After a three day trial on October 27, 28, and 30, 2009, the parties have rested on the preliminary injunction issues. For reasons set out below, Dr. Timothy Stirneman's Motion for a Preliminary Injunction will be granted and relief will be ordered to prevent irreparable harm to Plaintiff pending trial on this Adversary proceeding scheduled to start November 30, 2009.

## JURISDICTION

Subject matter jurisdiction lies under 28 U.S.C. § 1334. This matter is before the Court pursuant to 28 U.S.C. § 157 and is referred here by District Court Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. Venue lies under 28 U.S.C. § 1409. The Adversary proceeding constitutes a non-core but otherwise related proceeding under 28 U.S.C. § 157(c)(1). However, if the injunctive relief sought is warranted, that relief is within core jurisdiction. A bankruptcy judge has core jurisdiction pursuant to § 157(b)(2)(A) to issue an injunction, even in an otherwise related jurisdictional proceeding, in furtherance of administering that proceeding and preventing irreparable harm. *See Celotex Corp. v. Edwards*, 514 U.S. 300, 312, n.9 (1995) (recognizing in dicta that the two Courts of Appeals decisions underlying the case had approved an injunction when the bankruptcy court had "related" jurisdiction); *Fisher v. Apostolou*,

155 F.3d 876, 881 (7th Cir. 1998) (affirming bankruptcy court's injunction against investors' separate fraud suit against nondebtor accomplices pending the outcome of the bankruptcy proceeding when jurisdiction was "related" and injunction was not an abuse of discretion).

## DISCUSSION

### I. Dr. Audrey Stirneman Is Personally Liable for the Shared Overhead Expenses Under the Term Sheet Agreement Because She Was a Promoter for Algonquin Dental, P.C., who the Parties Intended to Be Personally Liable and There Was No Novation of the Term Sheet Agreement

A promoter is a person who "forms a corporation and procures for it the rights, instrumentalities and capital to enable it to conduct its business." *Stap v. Chi. Aces Tennis Team, Inc.*, 379 N.E.2d 1298, 1300 (Ill. App. Ct. 1978). A promoter is personally liable on pre-incorporation contracts entered into with third parties on behalf of the corporation if the parties intended that the promoter remain personally liable. *Id.* A court determines intent by examining the contract and other contemporaneously executed documents. *Id.* A promoter who is personally liable may be released from liability upon a novation: "a substitution of a new obligation for an existing one, which is thereby extinguished." *See Cincinnati Ins. Co. v. Leighton*, 403 F.3d 879, 887 (7th Cir. 2005). A novation requires "'[1] a previous, valid obligation; [2] a subsequent agreement of all the parties to the new contract; [3] the extinguishment of the old contract; and [4] the validity of the new contract.'" *Id.* (quoting *Phillips & Arnold, Inc. v. Frederick J. Borgsmiller, Inc.*, 462 N.E.2d 924, 928 (Ill. App. Ct. 1984)).

In this case, Dr. Audrey Stirneman is personally liable as a promoter of Algonquin Smiles, P.C. First, the original Term Sheet Agreement specifically stated that Dr. Audrey Stirneman would be creating a new corporation, and she did in fact create a new corporation named Algonquin Smiles,

3

P.C. Thus, Dr. Audrey Stirneman was a promoter for Algonquin Smiles, P.C. when she entered into the Agreement. Second, the Agreement is clear that Dr. Audrey Stirneman was to remain personally liable. The Agreement provided that the new corporation would be "responsible for . . . 50% of the overhead expenses listed in the attached Exhibit C." The Agreement also provided that, in the event that the new corporation could not meet this obligation, Dr. Audrey Stirneman's draw from her new corporation or from All Smiles Dental, P.C. would be reduced so as to retain money to pay the expenses. Also, Dr. Audrey Stirneman signed the Agreement in her individual capacity, not as a representative for the new corporation. Third, there was no novation releasing Dr. Audrey Stirneman from her personal liability. Although the Supplement amended the Agreement to include Algonquin Smiles, P.C., in place of "Newco," Algonquin Smiles, P.C. was not a party to the Supplement. Because Algonquin Smiles, P.C. would be an obligor under the new agreement, it had to be party to the Supplement to effect a novation. Therefore, Dr. Audrey Stirneman remains personally liable as a promoter for the shared overhead expenses and the past due expenses.

## II. The Evidence Showed Preliminarily that Dr. Audrey Stirneman Owes Dr. Timothy Stirneman at Least $155,084.47 for Expenses that Were to Be Shared for the Six Months Following the Agreement

Dr. Timothy Stirneman presented evidence that a total of $336,308.10 in shared expenses had been incurred, of which Dr. Audrey Stirneman owes $169,077.14 as her share. Called as an adverse witness during the defendant's case in chief, Dr. Timothy Stirneman conceded that $27,985.34 of these expenses were not properly labeled as shared expenses, but the rest were not discredited. Therefore, he has established preliminarily that his wife owes $155,084.47 (her alleged share of $169,077.14 minus $13,992.67, which is half of the non-shared expenses).

Dr. Audrey Stirneman argues that because her dental practice did not generate a positive cash flow out of $550,000 in gross receipts, she was not obligated under the terms of the Agreement to pay any of the shared expenses. In support, she presented income and expense statements purporting to show that her dental practice, Algonquin Smiles, P.C., had lost $121,883.31 between January 1, 2009, and October 12, 2009. These same financial statements also represented that $180,307.51 of legal fees had been paid out of the gross income of Algonquin Smiles, P.C. (However, Dr. Audrey Stirneman testified that she had paid only $60,000 of these fees, apparently related to her litigation here, the divorce, and other state court litigation). The financial statements also showed that she had obligated or paid out $122,511.67 for "new office investment," also out of the gross income of Algonquin Smiles, P.C. If she had not included $120,000 for attorney fees in the financial statement and had not shown her investment in a new office space, then, assuming the accuracy of the remaining numbers, she would have had net cash flow of $120,628.36. Thus, her testimony that "the money ran out" and that she could not make the payments to Dr. Timothy Stirneman was disingenuous at best. In fact, she diverted Algonquin Smiles, P.C. earnings for personal debts, needs, and wishes, and disregarded calculation of earnings for purposes of the Agreement. If she had not done this, she would have had most of the funds to pay Dr. Timothy Stirneman what she owed him.

### III. Dr. Timothy Stirneman Is Entitled to Relief Against Dr. Audrey Stirneman's Transfer of Funds to Wachovia Bank Because Preliminarily She Is Found to Have Made the Transfer with the Intent to Hinder and Delay and Thereby Defraud Him

Under the Illinois Uniform Fraudulent Transfer Act, there are two types of fraud: actual fraud or "fraud in fact," and constructive fraud or "fraud in law." *Grochocinski v. Schlossberg*, 402 B.R. 825, 834 (N.D. Ill. 2009) (Castillo, J.) (*citing Wachovia Sec., LLC v. Jahelka*, 586 F.Supp.2d 972, 1015 (N.D. Ill. 2008)). Fraud in fact exists when a debtor has the specific intent to hinder, delay, or

defraud any creditor of the debtor. 740 Ill. Comp. Stat. 160/5(a)(1); *Grochocinski*, 402 B.R. at 834. Fraud in law exists when a debtor conveys assets for less than reasonably equivalent value, rendering the debtor insolvent when the debtor has already incurred or expects to incur indebtedness. 740 Ill. Comp. Stat. 160/5(a)(2); *Grochocinski*, 402 B.R. at 834. Several factors, known as "badges of fraud," may be considered in determining whether a debtor had a specific intent to defraud a creditor, including:

(1) the transfer or obligation was to an insider;
(2) the debtor retained possession or control of the property transferred after the transfer;
(3) the transfer or obligation was disclosed or concealed;
(4) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;
(5) the transfer was of substantially all the debtor's assets;
(6) the debtor absconded;
(7) the debtor removed or concealed assets;
(8) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;
(9) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;
(10) the transfer occurred shortly before or shortly after a substantial debt was incurred; and
(11) the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

740 Ill. Comp. Stat. 160/5(b); *Grochocinski*, 402 B.R. at 834–35. Presence of a sufficient number of these badges establishes a presumption of fraud, which then must be rebutted. *Grochocinski*, 402 B.R. at 835 (*citing Kunz v. City of Chi.*, No. 01 C 1753, 2007 WL 404022, at *3, 2007 U.S. Dist. LEXIS 7958, at *9 (N.D. Ill. Jan. 31, 2007)). Subject to the rights of a good faith transferee, a creditor may obtain relief against a fraudulent transfer through: (1) avoidance of the transfer; (2) an attachment against the transferred property or other property of the debtor; (3) an injunction against

6

further disposition by the debtor or a transferee, or both, of the asset or of other property; (4) appointment of a receiver to take charge of the transferred property; or (5) other appropriate relief. 740 Ill. Comp. Stat. 160/8 to 9.

Dr. Audrey Stirneman admitted and documents showed that on October 5, 2009, she transferred $71,000 generated from her Algonquin Smiles, P.C. dental practice to Wachovia Bank into an account in the name of Algonquin Smiles, P.C. in order to facilitate payment for construction on her new dental office, evidently part of her "new office investment." Although the evidence was not fully developed on this subject, several of the badges of fraud are present. First, Dr. Audrey Stirneman concealed the transfer, not disclosing it to Dr. Timothy Stirneman until she testified in court about her financial situation. Second, the transfer occurred after Dr. Timothy Stirneman had commenced this Adversary proceeding against Dr. Audrey Stirneman. Third, the transfer constituted a large part of Dr. Audrey Stirneman's liquid business assets. Finally, Dr. Audrey Stirneman made the transfer even though she tried to establish at trial that she had negative cash flow every month after the Agreement was signed. All of these badges of fraud indicate preliminarily that Dr. Audrey Stirneman did have the specific intent to hinder and delay, and thereby defraud her husband from collecting her debt to him provided for under the Agreement. Therefore, Dr. Timothy Stirneman is entitled to preliminary injunction protecting against her use of the moneys transferred.

### IV. A Preliminary Injunction Is Warranted Because Dr. Timothy Stirneman Seeks Equitable Relief, He Does Not Have an Adequate Remedy at Law, the Harm to Him Outweighs the Harm to Dr. Audrey Stirneman, He Has a Reasonable Likelihood of Success on the Merits, and No Public Interest Will Be Disserved

A court may not issue a preliminary injunction freezing a defendant's assets in an action for money damages when no equitable remedy is claimed. *Grupo Mexicano de Desarrollo S.A. v.*

*Alliance Bond Fund, Inc.*, 527 U.S. 308, 333 (1999); *CSC Holdings, Inc. v. Redisi*, 309 F.3d 988, 996 (7th Cir. 2002). However, a restraint on assets is still proper if a suit seeks equitable relief. *Grupo Mexicano*, 527 U.S. at 333; *CSC Holdings*, 309 F.3d at 996 (affirming district court's order freezing assets when plaintiff moved for both legal and equitable relief and the assets were related to the equitable relief sought).

In this case, a preliminary injunction is permissible. As in *CSC Holdings*, the plaintiff seeks both legal and equitable relief. Specifically, Dr. Timothy Stirneman seeks money damages resulting from his wife's breach of the Agreement as well as an injunction mandating compliance with the Agreement. Because Dr. Timothy Stirneman does seek an injunction as final relief, the fact that he also seeks money damages is not fatal to his request for a preliminary injunction.

A court may issue a preliminary injunction only on notice to the adverse party. Fed. R. Civ. P. 65 (made applicable in bankruptcy by Rule 7065 Fed. R. Bankr. P.). When deciding whether to grant a preliminary injunction, a court should consider four factors:

(1) whether the plaintiff will have an adequate remedy at law or will be irreparably harmed if the injunction does not issue;
(2) whether the threatened injury to the plaintiff outweighs the threatened harm the injunction may inflict on the defendant;
(3) whether the plaintiff has at least a reasonable likelihood of success on the merits; and
(4) whether the granting of a preliminary injunction will disserve the public interest.

*O'Connor v. Bd. of Ed. of Sch. Dist. No. 23*, 645 F.2d 578, 580 (7th Cir. 1981) (citing *Reinders Bros. v. Rain Bird E. Sales Corp.*, 627 F.2d 44, 48 (7th Cir. 1980)). "Preliminary relief is properly sought only to avert irreparable harm to the moving party." *Chi. United Indus., Ltd. v. City of Chi.*, 445 F.3d 940, 944 (7th Cir. 2006).

In this case, a preliminary injunction is appropriate. First, Dr. Timothy Stirneman has demonstrated a reasonable likelihood of success on the merits. His wife has not complied with the Agreement. She argued that she never received an accounting of the amounts she owes under the Agreement. However, she also testified that she did receive some bills and other documents from Dr. Timothy Stirneman, although they were not neatly organized. Her testimony admitted that she looked very few of these, and thereby disclosed her indifference to learning details about his claims. Second, Dr. Timothy Stirneman does not have an adequate remedy at law and will be irreparably harmed absent an injunction. Many businesses struggle to pay their own expenses. Things get even worse when a business must also pay the expenses of another business. Dr. Timothy Stirneman has incurred liability and spent money for services that supported Dr. Audrey Stirneman's dental practice for many months. His own liabilities have increased and his business has thereby been jeopardized. Although Dr. Timothy Stirneman may later obtain a money judgment to recover the amounts that Dr. Audrey Stirneman not paid, that will be cold comfort if his business has already shuttered. Third, the threat of Dr. Timothy Stirneman's business closing certainly outweighs any harm that might result in delay to Dr. Audrey Stirneman's efforts to divert moneys from her business funds promised to Dr. Timothy Stirneman in order to create a new business. Finally, there is no public interest that would be disserved if Dr. Timothy Stirneman's requested relief is granted. Therefore, it is appropriate in this case to grant a preliminary injunction against Dr. Audrey Stirneman.

## CONCLUSION

Dr. Audrey Stirneman is personally liable under the Term Sheet Agreement to pay 50% of the dental practice expenses she shares with Dr. Timothy Stirneman and 50% of certain past due expenses. She has not made those payments. Instead, she paid her attorneys and set aside funds for

"new office investment," and recently transferred $71,000 of her funds to Wachovia Bank to facilitate construction of her new office. The evidence tends to indicate that payment of her attorneys' fees was an effort to reduce her personal liabilities out of a funding source that she agreed would make payments to Dr. Timothy Stirneman, and the transfer of $71,000 was likely a fraudulent transfer, appearing to entitle Dr. Timothy Stirneman to relief against that transfer. A preliminary injunction is permissible and appropriate in this case to prevent irreparable harm of further diversions and use of funds that she contracted to use to pay her debt to Dr. Timothy Stirneman. Therefore, by separate order, (1) Dr. Timothy Stirneman's Motion for a Preliminary Injunction will be granted, (2) Dr. Audrey Stirneman will be enjoined from using the $71,000 she transferred to Wachovia Bank to establish a new dental office and from using any further portion of the gross receipts earned in her dental practice to establish a new dental office or to pay attorney fees, and (3) Dr. Audrey Stirneman will be ordered to prepare and file a full accounting of the funds in the Wachovia Bank account. Ruling on further relief requested is reserved until conclusion of the trial.

ENTER:

Jack B. Schmetterer
United States Bankruptcy Judge

Dated this 4th day of November, 2009.